**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

KIMBERLY A. D.,

                              Plaintiff,

v.                                                    No. 6:22-CV-01103
                                                      (CFH)
COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

**APPEARANCES:**                          **OF COUNSEL:**

ANTONOWICZ GROUP                          PETER W. ANTONOWICZ, ESQ.
  _Attorney for Plaintiff_
148 West Dominick Street
Rome, New York 13440


SOCIAL SECURITY ADMINISTRATION            FERGUS KAISER, ESQ.
OFFICE OF GENERAL COUNSEL                 Special Ass't U.S. Attorney
  _Attorney for Defendant_
6401 Security Boulevard
Baltimore, Maryland 21235

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

<u>**MEMORANDUM-DECISION & ORDER**</u>

        Plaintiff Kimberly A. D.[1] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision of the Commissioner of Social Security ("the Commissioner" or

"Defendant") denying her application for Supplemental Security Income ("SSI").  _See_

_____

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Decision and Order will identify plaintiff by first name and last initial.

Dkt. No. 1 ("Compl.").[2]  This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Plaintiff moves for the Commissioner's decision to be "reversed with directions to the Commissioner of Security to award benefits," and, in the alternative, for "the matter to be remanded for further proceedings."  Dkt. No. 11 at 23-24.  The Commissioner seeks affirmance of the Commissioner's determination that Plaintiff is not disabled.  *See* Dkt. No. 16.  For the reasons discussed below, the Commissioner's decision is affirmed.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on May 26, 1967.  T. at 59.[3]  Her highest level of education is high school, which she completed.  T. at 40.  On March 6, 2019, Plaintiff protectively filed an application for SSI alleging disability beginning December 1, 2011.  T. at 328-333.  She allegef disability as a result of depression, a panic disorder, an anxiety disorder, fibromyalgia, irritable bowel syndrome, a possible hernia, possible cervical cancer, endometriosis, back problems, and heart problems.  T. at 344.  Plaintiff's application was initially denied on July 5, 2019.  T. at 10, 112.  She then submitted a request for reconsideration on August 1, 2019.  T. at 120.  Her claim was reconsidered and denied on September 30, 2019.  T. at 10, 121.  Plaintiff requested a hearing before an ALJ on October 25, 2019, and an in-person hearing was scheduled for May 6, 2020.

---

[2] Parties consented, in accordance with 28 U.S.C. 636(c), Fed. R. Civ. P. 73, N.D.N.Y. L.R. 72.2(b), and General Order 18, to review of this matter by Magistrate Judge, with direct review by the Second Circuit Court of Appeals in the event of an appeal.  See Dkt. No. 5.

[3] The Administrative Transcript is found at Dkt. No. 10.  Citations from the Administrative Transcript will be referred to as "T." followed by the Bates-stamped page number located in the bottom right-hand corner of each page.  Citations to the parties' briefs is to the pagination generated by the Court's CM/ECF electronic filing system, located at the header of each page.

T. at 131, 149.  The COVID-19 pandemic, and a lengthy series of scheduling difficulties prevented the hearing from taking place until July 22, 2021.  *See* T. at 174, 189, 216, 243, 263-64, 265, 297.

ALJ Kenneth Theurer conducted the July 22, 2021, hearing by video conference. T. at 32, 34-35.  The ALJ heard the testimony of Plaintiff, represented by Peter W. Antonowicz, as well as the testimony of Vocational Expert ("VE") Lisa Cary.  T. at 32. Plaintiff, through her representative, amended her alleged onset date from December 1, 2011, to March 6, 2019.  T. at 39.  Plaintiff testified to suffering panic and anxiety attacks, depression, Post-Traumatic Stress Disorder ("PTSD"), bad cholesterol, and Irritable Bowel Syndrome with Constipation ("IBS-C").  T. at 40-41.  Plaintiff has been prescribed Nortriptyline, Pravastatin, Xanax, and Linzess to treat her conditions.  T. at 41, 44.  Plaintiff testified to suffering physical symptoms of IBS-C, including stomach cramps, bloating, pain, and other forms of discomfort.  T. at 42-43.  Plaintiff also testified to severe anxiety because of her IBS-C symptoms, as well as social anxiety around strangers.  T. at 41-43.  She experienced nausea every day, and denied ever telling her healthcare providers that she was not nauseous.  T. at 46-47 (testifying "I never denied it . . . . That's something I deal with every day of my life . . . . So, I've never denied nausea. It's something I deal with on a daily basis, morning, noon and night.").  Plaintiff testified that her symptoms interfere with her activities of daily living ("ADLs"), specifically her frequent restroom use and chronic pain. T. at 49.

On August 2, 2021, the ALJ issued a written decision finding that Plaintiff was not disabled under the SSA.  T. at 7, 20-21.  Plaintiff requested Appeals Council review of the ALJ's decision on October 12, 2021.  T. at 319-20.  This request was not timely

3

filed, but the Appeals Council found that Plaintiff had good reason for the delay.  T. at 1; *see* T. at 319-320.  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on September 6, 2022.  T. at 1.  Plaintiff timely commenced this action on October 7, 2022. Dkt. No. 1.

## II. APPLICABLE LAW[4]

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *See Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

### B. Standard for Benefits

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[4] Although the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  *See id.* § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe

> impairment, he [or she] has the residual functional capacity to
> perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work,
> the [Commissioner] then determines whether there is other work
> which the claimant could perform.

*Berry*, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  *See DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  *Id.* (citing *Berry*, 675 F.2d at 467).

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520a, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments.  *See id.*  SSR 96-8p stresses that the "special technique" described in 20 C.F.R. § 404.1520a is *not* an RFC assessment, and further, the mental RFC assessment used at steps four and five "requires a more detailed assessment."  SSR 96-8P (S.S.A. July 2, 1996).  This "special technique" is used by ALJs to determine, as a threshold matter, whether a claimant has one or more medically determinable mental impairments.  *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 151 (N.D.N.Y. Aug. 17, 2021).  If the claimant suffers from one or more impairments, "[t]his technique also enables administrative law judges to determine whether [those] medically determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)."  *Id.*

At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments.  20 C.F.R. § 404.1520a(b)(1).  If so, at step two of the special technique the ALJ must rate the degree of functional limitation that results from the medically-determinable mental impairment(s).  20 C.F.R. § 404.1520a(b)(2).  This involves the consideration of the degree of functional limitation present in "four broad functional areas": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself.  20 C.F.R. § 404.1520(c)(3).[5]

These four functional areas are measured on a five-point scale that ranges between "none," "mild," "moderate," "marked," and "extreme," with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity."  20 C.F.R. § 404.1520a(c)(4).  If, however, the degree of limitation in each of these areas is "none" or "mild," the impairment will be considered non-severe absent evidence that "otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  *Id.* § 404.1520a(d)(1); *see also Ornelas-Sanchez v. Colvin*, 632 F. App'x 48 (2d Cir. 2016) (summary order) (holding that the ALJ failed to properly follow the special technique, and effective review was frustrated, where he only "conclusory noted" that the record showed that the plaintiff's impairments caused more than minimal functional limitations and interfered with her ability to perform some basic work-related activities.)

---

[5] These areas of functioning, also known as "B Criteria," were revised on January 17, 2017. Prior to January 17, 2017, they were known as "activities of daily living," "social functioning," "concentration, persistence, or pace," and "episodes of decompensation."

### C. Standard for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[6] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. § 404.1520c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. § 404.1520c(a)-(c).

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions.'"  *Thomas H. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, 2023 WL 3731332, at *4 (W.D.N.Y. May 31, 2023) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020); *see also* 20 C.F.R. § 404.1520c(a), (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

---

[6]  As plaintiff's application was filed on March 30, 2021, the new regulations apply.  *See* T. at 19.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. § 404.1520c(b)(2).  With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

An ALJ must "'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.'"  *Brian O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. §§ 404.1520c(a)-(b)(1), 416.920c(a)-(b)(1)).  Further, although an ALJ is specifically required to "explain how [she] considered the supportability and consistency factors," an "an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion."  *Brian O.*, 2020 WL 3077008, at *4 (citing 20 C.F.R. § 404.1520c(b)(2)).  "However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5)."  Id. (citing 20 C.F.R. § 404.1520c(b)(3).

### D. Standard for Evaluation of Symptoms

In evaluating a plaintiff's residual functional capacity ("RFC") for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); 20 C.F.R. § 416.929; *see also McLaughlin v. Sec'y of Health, Educ., & Welfare*, 612 F.2d 701, 704-05 (2d Cir. 1980). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 Fed. Reg. 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016, "the Commissioner eliminated the term 'credibility' from the 'sub-regulatory policy' because the regulations themselves do not use the term." *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *10 (N.D.N.Y. 2019) (quoting SSR 16-3p; 81 Fed. Reg. at 14167). "Instead, symptom evaluation tracks the language of the regulations."[7] *Id.* "The evaluation of symptoms involves a two-step process: First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments 'could reasonably be expected to produce the pain or other symptoms alleged . . . .'" *Id.* (quoting 20 C.F.R. §§ 416.929(a), (b)).

---

[7] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." SSR 16-3p, 81 Fed. Reg. at 14167. The Court will remain consistent with the terms as used by the Commissioner.

"If so, at the second step, the ALJ must consider 'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Natashia R., 2019 WL 1260049, at \*10* (quoting *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (summary order) and citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (additional internal quotation marks omitted).[8]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ "must consider the other evidence and make a finding on the credibility of the individual's statements." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) "[The claimant's] daily activities"; (2) "location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"; (3) "[p]recipitating and aggravating factors"; (4) "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms"; (5) "[t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms"; (6) "[a]ny measures [the claimant' use[s] or ha[s] used to relieve  pain or other symptoms"; and (7) "[o]ther factors concerning claimant's functional limitations and restrictions due to pain or symptoms". *Id.* (quoting 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)).

---

[8]  The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at \*2 (July 2, 1996), which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

The ALJ must provide specific reasons for the determination. <u>Cichocki v. Astrue</u>, 534 F. App'x 71, 76 (2d Cir. 2013). However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. <u>Id.</u>[;] <u>See</u> also <u>Del Carmen Fernandez</u>, 2019 WL 667743 at *11 (citing <u>Rousey v. Comm'r of Soc. Sec.</u>, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" <u>Cichocki</u>, 534 F. App'x at 76 (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983)).

<u>Natashia R.</u>, 2019 WL 1260049, at *10.

### III. THE ALJ'S DECISION

In his August 6, 2021, decision, the ALJ applied the five-step sequential evaluation.  T. at 11.  First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the application date.  T. at 12.  Second, the ALJ determined Plaintiff has the following severe impairments: "irritable bowel syndrome, depressive disorder, posttraumatic stress disorder, and anxiety disorder."  *Id.*  Third, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  T. at 13.

At the fourth step, the ALJ found, based on the above-stated impairments, Plaintiff has the RFC to perform light work, but only while avoiding "work requiring more complex interaction or joint efforts with coworkers to achieve work goals."  T. at 14.  Further, the ALJ determined Plaintiff "[s]hould have no more than occasional contact with coworkers, supervisors and the public."  *Id.*  The ALJ stated, "[s]he can handle reasonable levels of simple work-related stress in that she can make simple decisions directly related to the completion of her tasks in a stable, unchanging work environment."  T. at 15.

The ALJ then determined that Plaintiff has no past relevant work.  T. at 19.  The ALJ noted Plaintiff was 51 years old at the time of the decision, defined as "an individual closely approaching advanced age."  *Id.* at 19 (quoting 20 C.F.R. § 416.963).  The ALJ also noted that Plaintiff has a high school education.  *Id.*  The ALJ did not address transferability of job skills because Plaintiff has no past relevant work.  *Id.*  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there exist jobs in significant numbers in the national economy that Plaintiff can perform.  *Id.*  Thus, the ALJ determined Plaintiff has not been under a disability as defined in the Social Security Act, from March 6, 2019, until the date of the ALJ's decision.  T. at 20-21.

## IV. ARGUMENTS

Plaintiff contends that the ALJ erred in assessing the medical record as it relates to Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms.  *See* Dkt. No. 11 at 18.  Specifically, Plaintiff asserts that the ALJ misrepresented portions of the medical record relevant to his symptom assessment.  *Id.* at 19.  Plaintiff also contends that the ALJ erred in assessing the persuasiveness of the medical opinions, particularly by underestimating the persuasiveness of Plaintiff's treating sources.  *See id.* at 21.  Plaintiff argues the ALJ improperly credited references to psychological wellbeing in reports from "a cardiologist, gastroenterologist, and primary care physician" over the findings of a treating psychiatrist.  *See id.* at 22.

Defendant contends that the ALJ supportably concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the record.  *See* Dkt. No. 16 at 6.  Defendant argues that

Plaintiff has failed to state arguments which, if true, would entitle her to relief.  *See id.* at 7 (citing Dkt. No. 11 at 20).  Defendant notes that this Court should base its analysis on whether the ALJ has supported his position with substantial evidence, not whether substantial evidence exists to support Plaintiff's position.  *See id.*  Defendant also contends that the ALJ properly assessed the medical opinions for persuasiveness in terms of supportability and consistency.  *See id.* at 8.

## V. RELEVANT OPINION EVIDENCE

### A. H. Tzetzo, M.D., and J. Koenig, M.D.

Plaintiff's medical records were examined by state agency medical consultants H. Tzetzo, M.D., and J. Koenig, M.D., for consideration at the initial level.  *See* T. at 60-74.  Dr. Tzetzo's medical specialty is psychiatry[9] and Dr. Koenig's medical specialty is physical medicine[10].  T. at 67, 70.  Drs. Tzetzo and Koenig considered Plaintiff's medical records from MVHC – Women's Health Center; Rhiannon Hickox, M.D.; two consultative examination reports from Industrial Medical Associates;Sister Rose Vincent Medical Center; St. Elizabeth Hospital; MVHS Medical Group – S/Utica Medical Office, as well as Plaintiff's self-reported ADLs.  T. at 62-65.  Disability Adjudicator B. Jaffe issued a Disability Determination Explanation including the results of Drs. Tzetzo and Koenig's review on July 3, 2019.  T. at 74.

---

[9] A "Medical Specialty Code" of 37 (T. at 67) indicates a specialization in "Psychiatry."  List of Social Security Disability Programs Medical Specialty Codes, Social Security Administration Program Operations Manual Systems (POMS) (May 5, 2015) (last visited Mar. 11, 2024) (*available at* https://secure.ssa.gov/poms.nsf/lnx/0424501004).

[10] A "Medical Specialty Code" of 34 (T. at 70) indicates a specialization in "Physical Medicine."  List of Social Security Disability Programs Medical Specialty Codes, *supra* n.8.

Drs. Tzetzo and Koenig listed Plaintiff's medically-determinable impairments as a "Spine Disorder" and "Depressive, Bipolar and Related Disorders."  T. at 66.  Dr. Tzetzo utilized the psychiatric review technique and determined the following: Plaintiff's capacity to understand, remember, or apply information is mildly impaired; her ability to interact with others is mildly impaired; her ability to concentrate, persist, or maintain pace is moderately impaired; and her capacity to adapt or manage herself is moderately impaired.  T. at 67.  Dr. Koenig assessed Plaintiff to have the physical RFC to perform medium work.  T. at 69, 73.  Dr. Tzetzo assessed Plaintiff to have several marked and moderate limitations to her mental RFC.  T. at 70-72.

Dr. Tzetzo relied on the following medical record evidence in his psychiatric review technique explanation: Plaintiff had "[n]o [history] of psychiatric hospitalization in the past 12 months.  Currently receiv[ing] outpatient mental health [treatment/therapy]," Plaintiff's treating physician noted she has a "[history] of chronic anxiety and depression," the consultative examiner offered a "[f]air prognosis," record evidence indicated Plaintiff has "anxiety about situations without ability to escape, worries about being embarrassed and experiences with panic if avoidance is not possible," and Plaintiff's self-reported ADLs are modest with some socialization but difficulty cleaning, doing laundry, and shopping.  T. at 67.  Dr. Koenig relied on the following medical record evidence in his physical RFC explanation: Plaintiff experienced chest pain for four hours on February 23, 2019, but presented at the emergency room with an "unremarkable cardiac silhouette" and "[n]o respiratory distress"; Plaintiff's gait is normal, and she can walk on heels and toes without difficulty; Plaintiff's abdomen is "soft, non tender"; Plaintiff has "60 degrees flexion" and "lateral flexion 20 degrees," with

15

no sensory deficits or muscle atrophy, and "5/5" strength in upper and lower extremities; however, as of a March 5, 2019, examination, Plaintiff had a "[history] of chronic pain for 3-4 years, constant pain above umbilicus, increased with eating"; no diarrhea or constipation was noted; and finally, Plaintiff denied "lower back, muscle aches, localized joint pain and stiffness."  T. at 70.

### B. J. May, Ph.D., and H. Miller, M.D.

Plaintiff's medical records were examined at the reconsideration level by state agency medical consultants J. May, Ph.D., and H. Miller, M.D.  *See* T. at 75-92.  Dr. May's medical specialty is psychology[11] and Dr. Miller's medical specialty is internal medicine.[12]  T. at 85, 88.  Drs. May and Miller considered the same records as Drs. Tzetzo and Koenig, as well as new records from the office of Ajay Goel, M.D., Sister Rose Vincent Family Medicine, and MVHS Medical Group.  T. at 77-78, 81-82. Disability Adjudicator A. Bienias issued a Disability Determination Explanation including the results of Drs. May and Miller's review on September 30, 2019.  T. at 74.

Drs. May and Miller listed Plaintiff's medically-determinable impairments as "Spine Disorders," "Other Disorders of Gastrointestinal System," and "Depressive, Bipolar and Related Disorders."  T. at 83.  Dr. May utilized the psychiatric review technique and determined the following: Plaintiff's capacity to understand, remember, and apply information is mildly impaired; her ability to interact with others is mildly impaired; her ability to concentrate, persist, or maintain pace is moderately impaired;

---

[11] A "Medical Specialty Code" of 38 (T. at 85) indicates a specialization in "Psychology."  List of Social Security Disability Programs Medical Specialty Codes, *supra* n.8.
[12] A "Medical Specialty Code" of 19 (T. at 88) indicates a specialization in "Internal Medicine."  List of Social Security Disability Programs Medical Specialty Codes, *supra* n.8.

and her capacity to adapt or manage herself is moderately impaired.  T. at 84.  Dr. Miller assessed Plaintiff to have the physical RFC to perform light work with special postural limitations, namely only occasional stooping.  T. at 86-87, 91.  Dr. May assessed Plaintiff has having no marked limitations to Plaintiff's mental RFC, but numerous moderate limitations.  T. at 88-90.

Dr. May cited the same medical record evidence as Dr. Tzetzo in his psychiatric review technique explanation, but cited one additional note: from a June 10, 2019, report, stating that Plaintiff was anxious about discontinuing Xanax use; taking amitriptyline has helped "a bit" with sleep, but not improved Plaintiff's mood; and that Plaintiff had no side effects, including dry mouth or constipation, from amitriptyline.  T. at 84.  Dr. Miller cited the same medical record evidence as Dr. Koenig, discussing five additional items: a June 7, 2019, report from Ajay Goel, M.D., which indicates Plaintiff suffers intestinal pain after eating and vomits frequently, but "CAT scan with contrast was essentially negative except questionable collapse of the colon . . . ."; a July 22, 2019, report noting several abnormalities and recommending a pelvic ultrasound and colonoscopy; an August 2, 2019, report from Dr. Goel again indicating that Plaintiff suffers pain after eating and experiences bloating; an August 20, 2019, colonoscopy indicating that Plaintiff had "small internal hemorrhoids,"; and an August 20, 2019, upper GI endoscopy showing "[d]iffuse minimal inflammation characterized by erythema" "in the gastric atrium."  T. at 88.

**C. Elke Lorenson, M.D.**

On May 3, 2019, Elke Lorenson, M.D., performed an internal medicine consultative examination.  *See* T. at 580-584.  Dr. Lorenson listed Plaintiff's complaints

and symptoms, including "back pain, fibromyalgia, and irritable bowel syndrome." T. at 580. Plaintiff reported that her back pain "is chronic in nature, located in the lower lumbar spine, and [is] aggravated by prolonged standing and sitting"; her fibromyalgia causes "constant aching, like she has a fever in her joints"; and her IBS causes vomiting and low body weight. *Id.* Plaintiff's gait was normal, she could walk on heels and toes without difficulty, she used no assistive devices, and needed no assistance getting on or off the exam table or rising from a chair. T. at 581. However, Plaintiff's squat was only "40% of full." *Id.* The results of Plaintiff's physical were normal, except for "six positive trigger points." T. at 582.

Dr. Lorenson diagnosed Plaintiff as having back pain, fibromyalgia, and "irritable bowel syndrome, by history." *Id.* Dr. Lorenson's medical source statement reads in full: "[n]o gross limitations sitting, standing, walking, or handling small objects with the hands. Mild to moderate limitations with bending, lifting, and reaching." *Id.*

### D. Dante Alexander, Psy.D.

On May 3, 2019, Dante Alexander, Psy.D., performed a psychiatric consultative examination. *See* T. at 576-79. Dr. Alexander noted Plaintiff's complaints of "frequent awakening 4 to 5 times a night," "[l]oss of appetite," "[d]ysphoric moods, social withdrawal," "[e]xcessive worry, avoidance of social settings and being around people," "[r]ecurrant nightmares" relating to abuse by an ex-husband, panic attacks causing "[p]alpitations, nausea, difficulty breathing, fear of losing control," and "[s]hort-term memory deficits." T. at 576-77. Plaintiff denied suicidal ideation, symptoms of mania, or thought disorder. *Id.*

18

Dr. Alexander assessed Plaintiff's affect as "[m]ildly depressed," and noted that plaintiff reported "feeling mildly dysthymic."  T. at 577.  Plaintiff's attention and concentration were "[m]ildly impaired due to limited math ability": Plaintiff could count and "do simple calculations," but struggled on serial 7s and 3s.  *Id.*  Plaintiff's recent and remote memory skills were "[m]ildly impaired due to nervousness in the evaluation."  *Id.*  Plaintiff demonstrated average intellectual functioning, an appropriate general fund of information, and good insight and judgment.  *Id.*

In his medical source statement, Dr. Alexander assessed Plaintiff as having mostly mild and mild-to-moderate limitations in all assessed categories.  *See* T. at 578.  Dr. Alexander concluded his statement by opining:

> Difficulties are caused by distractability. Results of the present evaluation appear to be consistent with psychiatric problems, but in itself does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.

*Id.*  He diagnosed Plaintiff as suffering "[u]nspecified trauma and stress related disorder with panic attacks," recommended Plaintiff "[c]ontinue with psychological and psychiatric treatment as currently provided," and noted Plaintiff's prognosis is "[f]air given the claimant may continue to improve with mental health treatment."  *Id.*

### E. Stephen Hudyncia, M.D.

Stephen Hudyncia, M.D., completed two medical source statements, the first on December 30, 2019, and the second on May 3, 2021.  *See* T. at 733-38, 1028-33.  In the December 30, 2019, medical source statement, Dr. Hudyncia assigned some mild, many marked, and one extreme limitation.  T. at 733-34.  He assessed Plaintiff as having marked limitations in: understanding and remembering detailed instructions,

carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, sustaining an ordinary routine without special supervision, acting in coordination and proximity to others without distraction, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism, getting along with peers, responding appropriately to changes in setting, traveling in unfamiliar places, and setting realistic goals.  *Id.*  Dr. Hudyncia assessed Plaintiff as having an extreme limitation in: "[t]he ability to complete a normal day without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods," which is a sub-category under "Sustained Concentration and Persistence."  T. at 734.  Dr. Hudyncia noted:

> Kimberly has marked difficulty with anxiety and a history of trauma. She is nearly always at the point of tears and emotional discomfort in the presence of others. Treatment has been only modestly beneficial and she has not worked in 17 years.

T. at 735.  He stated that psychiatric symptoms would cause Plaintiff to be off-task "at least 50% of the time in an 8-hour block of time."  *Id.*  Dr. Hudyncia diagnosed Plaintiff with panic disorder and PTSD.  T. at 736.

Dr. Hudyncia also completed an "Affective Disorder Questionnaire," in which he indicated Plaintiff suffers from a "Depressive Disorder characterized by" intermittent loss of interest, sleep disturbance, psychological agitation, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.  T. at 737.  Dr. Hudyncia concluded that Plaintiff suffers "[m]arked restrictions of daily activities," "[m]arked

difficulties in maintaining social functioning," and "[d]ifficulties in concentration,

persistence, or pace … ."  *Id.*

In the May 3, 2021, medical source statement, Dr. Hudyncia assigned few

marked limitations, more moderate limitations, and no extreme limitations.  *See* T. at

1028-29.  He assessed Plaintiff to have marked limitations in maintaining attention and

concentration for extended periods, performing activities within a schedule, sustaining

an ordinary routine without special supervision, interacting appropriately with the

general public, accepting instructions and responding appropriately to criticism, getting

along with peers, and responding appropriately to changes in setting.  *Id.*  Plaintiff was

also assigned a marked limitation, rather than an extreme limitation, in her ability to

complete a normal day without interruptions from psychologically based symptoms.  T.

at 1029.  Dr. Hudyncia noted:

> Kimberly is an extremely psychologically frail individual who
> has difficulty interacting even within a supporting treatment
> environment. She is likely completely incapable of
> functioning in any productive capacity without demonstrating
> mental deterioration.

T. at 1030.  He stated that psychiatric symptoms would cause Plaintiff to be off-task "at

least 50% of the time in an 8-hour block of time."  *Id.*  Dr. Hudyncia diagnosed Plaintiff

with generalized anxiety disorder and depression.  T. at 736.

Dr. Hudyncia filled out another "Affective Disorder Questionnaire," dated May 3,

2021, which is mostly identical to the December 30, 2019, Affective Disorder

Questionnaire.  *See* T. at 1032-33.  Dr. Hudyncia added more detail to the conclusion

on this form, noting "[Plaintiff is] unable to function in a workplace environment.

Determined by history and observation over time."  T. at 1033.

### F. Rhiannon Hickox, LMSW

Rhiannon Hickox, a Licensed Master Social Worker ("LMSW"), completed a medical source statement on November 7, 2019.  *See* T. at 774-77.  She assessed Plaintiff to have marked and extreme limitations in most categories, with a few moderate limitations.  T. at 774-75.  LMSW Hickox assigned extreme limitations to Plaintiff's ability to: understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, act in coordination or proximity with others without being distracted, complete a normal day without interruptions from psychologically based symptoms, interact appropriately with the general public, accept instructions and criticism from superiors, respond appropriately to changes in setting, and travel in unfamiliar places or use public transportation.  *Id.*  LMSW Hickox diagnosed Plaintiff with "panic disorder with agoraphobia and posttraumatic stress disorder."  T. at 777.  LMSW Hickox elaborated that Plaintiff "cannot leave her home unless she is going to the doctor, and she has severe panic attacks when leaving home," and she also suffers from nausea, shakes, hyperventilation, diarrhea, heart palpations, shortness of breath, and extreme fear.  T. at 776.  LMSW Hickox stated these symptoms interfere with Plaintiff's "ability to sleep, eat adequately and maintain calm in stressful situations."  *Id.*

### G. Mark Bristol, M.D.

Mark Bristol, M.D., completed a medical source statement on June 25, 2021.  *See* T. at 1041-42.  Dr. Bristol diagnosed Plaintiff as having irritable bowel syndrome, depression, and anxiety.  T. at 1041.  Dr. Bristol noted Plaintiff experienced "[d]iffuse mild abdominal tenderness" during her exam.  *Id.*  He identified Plaintiff's symptoms as

weight loss, vomiting, abdominal pain/cramps, abdominal distension, and ineffective straining at stool.  *Id.*  Dr. Bristol stated that Plaintiff's abdominal pain was constant, but her cramping is intermittent.  *Id.*  He opined that Plaintiff would be off-task for more than 50% of an 8-hour workday, and would be absent more than 4 days per month.  *Id.*

## VI. ANALYSIS

### A. Substantial evidence supports the ALJ's assessment of Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her psychiatric symptoms

An ALJ is required to consider a claimant's symptoms, but symptoms alone cannot be the basis for a finding of disability.  20 C.F.R. § 416.929(a).  An ALJ must first establish whether medical signs or laboratory findings support the presence of a medically-determinable impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 416.929(b).  Next, the ALJ must evaluate the intensity and persistence of the alleged symptoms to determine the extent to which they limit the claimant's capacity to work.  20 C.F.R. § 416.929(c).  As part of this evaluation, the ALJ must consider objective medical evidence as well as other evidence, including "daily activities," "location, duration, frequency, and intensity of" symptoms, "[p]recipitating and aggravating factors," "[t]he type, dosage, effectiveness, and side effects of any medication" taken to treat symptoms, "[t]reatment, other than medicine," attempts to relieve symptoms, any other measures used to achieve relief, and "other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms."  20 C.F.R. § 416.929(c)(2)-(3).  As part of this analysis, an ALJ must "consider whether there are any inconsistencies in the evidence and the

extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence."  20 C.F.R. § 416.929(c)(4).

An ALJ's evaluation of the intensity and persistence of a claimant's symptoms is a finding of fact, which, if not based on an error of law, is entitled to deferential review under the substantial evidence standard.  *See Cichocki*, 534 F. Appx. at 75 ( "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms.") (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  An ALJ's evaluation "'must contain specific reasons for [their findings][13], supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'"  *Id.* at 76 (quoting SSR 96-7p, 1996 WL 374186, at *2).  An ALJ's findings concerning the intensity and persistence of a claimant's symptoms can be upheld under the substantial evidence standard even when they do not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3) if the ALJ has otherwise "thoroughly explained" their findings and "the record evidence permits us to glean the rationale of the ALJ's decision."  *Id.*

Here, the ALJ determined that Plaintiff suffers an impairment capable of producing the symptoms she describes, but her statements about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  T. at 15.  Plaintiff argues that this assessment is based on a "selective rendering of the psychiatric evidence," relying

---

[13] As discussed in footnotes 6 and 7, *supra*, the standard for an ALJ's evaluation of symptoms has not changed, but the term "credibility" is no longer used.

primarily on the "offhand comments by physicians treating the plaintiff for physical conditions and not for psychiatric disorders," and further that this assessment "essentially ignore[s] all of the treating psychiatric findings and prefer[s] the minute and robotic references to psychiatric issues contained in" reports by non-specialists in psychiatry.  Dkt. No. 11 at 22.  This is true insofar that the ALJ does rely on references to Plaintiff's neurological and psychological state offered by non-specialists.  *See* T. at 18 (citing T. at 518, 610, 714) (results of one physical exam performed by a cardiologist and two physical exams performed by a gastroenterologist which note, respectively, Plaintiff was "Alert and oriented. Mood is normal. Affect is normal," and "Mood is normal. Affect is normal").  This argument, however, requires the Court to reweigh the evidence presented to the ALJ, which it cannot do absent an error of law.  *See Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016).

Even disregarding the ALJ's references to so-called "offhand" comments, the ALJ's decision is still supported by substantial evidence.  Dkt. No. 11 at 22.  The ALJ cited the mental status examinations, specifically "progress notes [which] indicated that [Plaintiff] was not depressed, anxious or irritable, thought processes were not easily

distracted, and no suicidal ideations were present."  T. at 18 (citing T. at 435).  This appointment was "a routine follow up for anxiety and depression" at MVHS – South Utica Office; in other words, the nurse practitioner who treated Plaintiff was specifically assessing Plaintiff for "anxiety" and "depression," which she denied.  T. at 432-33.  The ALJ cited progress notes from another visit to MVHS, this time with LMSW Hickox, who would also be knowledgeable about Plaintiff's conditions.  T. at 18 (citing T. at 550). LMSW Hickox noted that Plaintiff was depressed, sad, with difficulty concentrating and her memory not intact.  T. at 550.  LMSW Hickox also reported Plaintiff's thought form was normal and goal directed, with intact judgment and insight.  *Id.*  The ALJ also cited to an office visit report from SEMC Family Medical Center where Plaintiff presented as "[s]ad and very anxious," but with "[j]udgment and thought content [] normal."  T. at 18 (citing T. at 725).  At a later visit with LMSW Hickox, Plaintiff was described as oriented, active, and cooperative, with normal speech, judgment, and thought content, intact attention, normal cognition and memory, no impulsivity, and appropriate judgment, but with an anxious mood.  *Id.* (citing T. at 806-07).

The ALJ's RFC contains significant non-exertional limitations, including understanding and following only simple instructions, performing simple tasks, maintaining concentration for simple tasks, interacting with coworkers and supervisors only as necessary to carry out simple tasks, only occasionally encountering coworkers, supervisors, and the public, and handling reasonable levels of simple work-related stress.  T. at 14-15.  From the ALJ's thorough explanation of his consideration of the medical evidence, and these restrictions, the Court can glean the ALJ's reasoning.  *See Cichocki*, 534 F. App'x at 76.  Since the ALJ's reasoning is supported by "such relevant

evidence as a reasonable mind might accept as adequate to support" his conclusions, remand is not appropriate on these grounds.  *See Sczepanski*, 946 F.3d at 157 (quoting *Moran*, 569 F.3d at 112) (internal quotation marks and citation omitted).

## B.  Substantial evidence supports the ALJ's analysis of the opinion evidence

An ALJ must consider each relevant medical opinion and prior administrative medical finding and articulate how persuasive they found them.  20 C.F.R. § 416.920c(a)-(b).  They will not "defer or give any specific weight, including controlling weight," to any particular medical opinion or PAMF.  20 C.F.R. § 416.920c(a).  "The factors of supportability . . . and consistency . . . are the most important," and an ALJ must address them in crafting their decision.  20 C.F.R. § 416.920c(b)(2).  Therefore, an ALJ must articulate how relevant they found an opinion's objective medical evidence and supporting explanations.  *See* 20 C.F.R. § 416.920c(c)(1).  They must also assess how consistent a medical opinion or PAMF is with the other medical and nonmedical evidence in the record.  *See* 20 C.F.R. § 416.920c(c)(2).  An ALJ must consider, but does not necessarily need to address, the factors outlined in 20 C.F.R. § 416.920c(c)(3)-(5).  Put simply, an ALJ's opinion can survive court review if it articulates "such relevant evidence as a reasonable mind might accept to support a conclusion." *Biesteck v.* Berryhill, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) and citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

Plaintiff argues that substantial evidence exists to support a finding of disability. *See* Dkt. No. 11 at 21-23.  Specifically, Plaintiff contends that Dr. Hudyncia's opinion could provide a legally-sufficient basis on which to find that Plaintiff is under a disability

within the meaning of the SSA. *Id.* at 22-23. However, Plaintiff has not demonstrated that the ALJ's opinion is not supported by substantial evidence, which is what this Court must consider. *See* 42 U.S.C. § 405(g); *Rivera*, 923 F.2d at 967 (2d Cir. 1991). Absent an error of law, which Plaintiff has also not demonstrated, this Court will not reweigh the evidence. *See Lefford*, 916 F. Supp. at 155 (quoting *White v. Shalala*, 823 F. Supp. 621, 623 (N.D. Ind. 1993)).

The ALJ supported his assessment of the medical opinion evidence with an articulation the persuasiveness, in terms of supportability and consistency, of each opinion. *See* T. at 16-19. Beginning with the first PAMF, by state agency reviewing consultants Drs. Tzetzo and Koenig, the ALJ found their conclusions persuasive and noted that they are supported by a review of the record. T. at 16. The ALJ also determined that Dr. Koenig's physical assessment is consistent with diagnostic images included in the record, and that Dr. Tzetzo's mental assessment is consistent with the mental status examinations and "the fact that [Plaintiff] has not required emergent care or hospitalization for her psychiatric symptoms." *Id.* It is permissible for an ALJ to credit the findings of a non-treating source such as a state agency reviewing doctor if the ALJ credibly concludes that the reviewing doctor's opinions are more consistent with the record. *See McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022) (noting "we cannot say that it was an error for the ALJ to conclude that parts of [treating doctors'] opinions were inconsistent with treatment records. [] Nor was it unreasonable for the ALJ to find that the medical assessments made by [reviewing doctors] were more persuasive." (internal citations to and quotations from the administrative record removed)).

28

The ALJ found the second PAMF, authored by state agency reviewing doctors May and Miller, more persuasive than Drs. Tzetzo and Koenig's PAMF, because Drs. May and Miller based their conclusions on a more extensive record review.  T. at 16. The ALJ also found Dr. Miller's physical findings persuasive because they were consistent with diagnostic images in Plaintiff's medical records.  *Id.*  The ALJ also found that Dr. May's mental assessment was consistent with the mental status examinations. *Id.*  Because Dr. Miller had access to a more complete record, the ALJ found the physical RFC for light work more persuasive than Dr. Koenig's physical RFC for medium work.  *Id.*  The opinions of non-treating doctors can be a proper basis for an ALJ's decision when they are "consistent with the objective medical evidence in the record."  *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016).

The ALJ found Dr. Lorenson's opinion persuasive, with one exception, because it was supported by a "complete physical . . . status examination[]."  T at 16.  More specifically, the ALJ also found Dr. Lorenson's opinion to be consistent with diagnostic images from Plaintiff's medical record.  *Id.*  The ALJ found that Dr. Lorenson's opinion that Plaintiff suffers "[m]ild to moderate limitations with . . . reaching" was not persuasive because "it is not supported by an underlying medically determinable impairment, and is contradicted by [Plaintiff's] self-reports of no restrictions."  *Id.*  (citing T. at 356 (Plaintiff states she can reach "[i]f [she] has to")).

The ALJ found Dr. Alexander's opinion to be persuasive because it is "supported by the mental status examinations, . . . and the fact that she has not required emergent

care or hospitalization for her psychiatric symptoms." *Id.*  The ALJ noted that Dr.

Alexander's opinion was supported by objective medical evidence, including that

> she was cooperative with adequate social skills, motor
> behavior was normal, eye contact was appropriate, speech
> intelligibility was fluent, expressive and receptive language
> was adequate, thought process was coherent and goal
> directed without evidence of hallucinations, delusions, or
> paranoia, intellectual functioning was average, insight was
> good, and judgement was good [].

T. at 18 (citing T. at 577).  The ALJ noted that Dr. Alexander's opinion is inconsistent

with Dr. Hudyncia and LMSW Hickox's, and concluded that Dr. Alexander's opinion is

more persuasive because it is consistent with the record as a whole.  T. at 18-19 (citing

T. at 610, 714, 725, 806-07, 1015, 991, 1001, 432, 674, 845, 910, 1013, 1023).

The ALJ was "not very persuaded" by Dr. Hudyncia's opinions.  T. at 16.  The

ALJ noted that Dr. Hudyncia's marked and extreme restrictions in the subcategories for

social interaction were not supported by Plaintiff's presentation as "calm and

cooperative." *Id.* (citing T. at 1013, 1024).  The ALJ also found that Dr. Hudyncia's

findings were inconsistent with a January 15, 2018, progress note where Plaintiff denied

depression and anxiety (T. at 18 (citing T. at 438)); a March 6, 2019, cardiologists report

where she presented as alert and oriented, with normal mood and affect (*id.* (citing T. at

518)); June 7, 2019, and August 7, 2019, gastroenterologist reports where Plaintiff's

mood and affect were reported as normal (*id.* (citing T. at 714, 610)); an August 16,

2019, visit to SEMC Family Medicine Center where Plaintiff was described as "sad and

very anxious," but with normal judgment and thought content (*id.* (citing T. at 725)); and

a September 14, 2020, visit to SEMC's Family Medicine Center where Plaintiff's mood,

affect, behavior, and thought content were described as normal.  *Id.* (citing T. at 1015).

The ALJ was also "not very persuaded" with LMSW Hickox's opinion.  T. at 16.

The ALJ cited to the same inconsistent evidence from the medical record as with Dr.

Hudyncia's opinion.  T. at 16 (citing T. at  438, 518, 714, 610, 725, 1015).  The ALJ

noted that LMSW Hickox's marked and extreme limitations were not supported by her

notes that Plaintiff was not agitated, aggressive, hyperactive, slowed, or withdrawn.  T.

at 16 (citing T. at 806).  The ALJ also noted that LMSW Hickox had assigned marked

and extreme limitations to concentration and persistence, but had earlier reported that

Plaintiff's "cognition and memory were normal."  T. at 17 (citing T. at 991).

The ALJ was likewise "not very persuaded" by Dr. Bristol's opinion.  T. at 16.

The ALJ found that Dr. Bristol's opinion about being off task and frequently missing

work was inconsistent with Plaintiff's lack of hospitalizations or emergency room visits.

T. at 17.  The ALJ found that Dr. Bristol's opinion was not well supported, since the only

objective medical evidence he relied on was a finding of "'mild' abdominal tenderness."

*Id.* (citing T. at 1041.)  The ALJ also determined that Dr. Bristol's opinion was

inconsistent with "relatively benign diagnostic images" in the record.  *Id.* (citing T. at

679, 699).

As Plaintiff filed his claim after March 27, 2017, the "treating physician rule" does

not apply.  *See Peets v. Kijakazi*, No. 21-3150, 2022 WL 17725391, at *1 (2d Cir. Dec.

16, 2022).  "Now, the regulations instruct ALJs not to 'defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s).' That an ALJ

does not give controlling weight to a particular medical opinion is not a basis for second-

guessing the ALJ's conclusions."  *Id.* (quoting 20 C.F.R. § 416.920c(a)).  The ALJ made

a colorable assessment of the opinion evidence, sufficiently articulating his thoughts on

the persuasiveness of the seven opinions and PAMFs in terms of supportability and consistency.  In making this assessment, the ALJ had to confront a record containing conflicting medical and opinion evidence.  As noted, absent an error of law, "we defer to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

In sum, although Plaintiff has reasonably argued that substantial evidence exists to support a finding of disability, Dkt. No. 11 at 5-10, the ALJ's findings of fact and articulation of the medical and opinion evidence was not so unavailing that "a reasonable factfinder would have to conclude otherwise."  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).  Indeed, "the standard is not whether an independent review of the record could reveal substantial evidence supporting a finding of disability; rather, whether substantial evidence supports the ALJ's conclusion."  *Tamara M. v. Saul*, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *10 (N.D.N.Y. Mar. 30, 2021) (citing *Bonet ex rel. T.B. v. Colvin*, 523 F. Appx. 58, 59 (2d Cir. 2013) (summary order) ("'[W]hether there is substantial evidence supporting the appellant's view is not the question,' instead the question to be answered by the Court is "whether substantial evidence supports the ALJ's decision.")).  The ALJ's analysis of the opinion evidence was not legally erroneous, and he supported his conclusions with substantial evidence, specifically by articulating the persuasiveness of each of the opinions and PAMFs in terms of supportability and consistency.   Based on the foregoing, the ALJ's decision was based on correct legal standards, and substantial evidence supports his determination that

Plaintiff was not under a disability within the meaning of the Social Security Act.

## VII. CONCLUSION

**WHEREFORE**, it is hereby:

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED** and the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**.

Dated: March 15, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge